598

## NATIONS v. UNITED STATES.

Circuit Court of Appeals, Eighth Circuit.
April 22, 1929.

No. 8295.

Patrick H. Cullen, of St. Louis, Mo. (John C. Vogel and Abbott, Fauntleroy, Cullen & Edwards, all of St. Louis, Mo., on the brief), for appellant.

John C. Dyott, Sp. Asst. Atty. Gen., and Louis H. Breuer, U. S. Atty., of Rolla, Mo. (Louise, Foster, Sp. Asst. Atty. Gen., on the brief), for the United States.

Before VAN VALKENBURGH and COTTERAL, Circuit Judges, and SCOTT, District Judge.

SCOTT, District Judge. Defendant, Heber Nations, was indicted by the United States grand jury for the Eastern division of the Eastern district of Missouri, with others, for conspiracy in two counts. Count 1 charged conspiracy to violate the National Prohibition Law, and count 2 charged conspiracy to defraud the United States of a sum of money, the same being alleged to be internal revenue tax upon a large quantity of beer to be manufactured. He was tried, convicted as charged in count 1, and, a motion for new trial having been overruled, has appealed.

Count 1 of the indictment in substance alleges: That Griesedieck Bros. Brewery Company, a corporation, from about the 1st day of April, A. D. 1923, to the 21st day of February, A. D. 1924, was authorized and permitted by permit Serial No. L-36, issued under the provisions of the National Prohibition Act and the regulations made in pursuance of that act, to operate at the city of St. Louis, in the state of Missouri, a dealcoholizing plant for the production of cereal beverages, and during said period of time did produce in its brewery large quantities of beer which contained more than one-half of 1 per cent. of alcohol by volume, and which lawfully could be removed from the premises where produced only after the alcoholic contents thereof should be reduced below one-half of one per cent. of alcohol by volume. That Raymond B. Griesedieck throughout said period of time was vice president and director of said corporation, and actively engaged in its management. That Charles S. Prather, of the city of Jefferson, state of Missouri, during said interval was in the employ of the state of Missouri, holding the official position of state beverage inspector. That Heber Nations, the appellant, late of the city of Jefferson, state of Missouri, during said period was in the employ of the state of Missouri under the bureau of labor statistics of said state as "commissioner." That said Griesedieck Bros. Brewing Company, a corporation, the said Raymond B. Griesedieck, the said Charles S. Prather, and the said Heber Nations, throughout the period stated, in the Eastern division of the Eastern judicial district of Missouri, unlawfully, feloniously, etc., did conspire, combine, confederate, and agree together to commit divers offenses against the United States, to wit, to violate title 2 of the National Prohibition Act, and more particularly sections 3, 6, 10, 25, and 37 thereof (27 USCA §§ 12, 16, 22, 39, 60), each offense to consist of said defendants unlawfully manufacturing and causing

to be manufactured for beverage purposes beer containing one-half of 1 per cent. and more of alcohol by volume, at the brewery and upon the brewery premises of the aforesaid corporation, unlawfully withdrawing and removing from said brewery premises the aforesaid beer in lots of 1,000 cases, or 30 barrels, more or less, at a single withdrawal, without first reducing the alcoholic contents thereof below one-half of 1 per cent. of alcohol by volume.

From the record it appears that one Gus O. Nations was a brother of the defendant Heber Nations, and a federal prohibition agent at the city of St. Louis. It was the theory and contention of the government: That the defendant Heber Nations was in close touch with his brother Gus O. Nations, and knew of the times when Gus O. Nations would be in St. Louis, and of the times he would be elsewhere, and was in position to keep the brewery company advised of the whereabouts of Gus O. Nations, and by so doing to enable the brewery company to remove and deliver to customers quantities of undealcoholized beer. That the parties named entered into the conspiracy charged, and that the brewery company paid to the defendant Heber Nations and other conspirators large sums of money for advice and protection.

Twenty-eight errors were assigned, but they have not all been argued. The errors assigned and argued are reclassified and grouped under five propositions, indicated by roman letters at the head of each on appellant's brief.

Specification and proposition I assigns error in overruling a demurrer to the indictment on the ground that certain descriptive recitals are contained therein, and is based upon original assignments 1 and 2. The recitals complained of were to the effect that during the existence of the conspiracy alleged, the defendant was an official of the state of Missouri, namely, labor commissioner, and that under the statute of Missouri it was defendant's duty to be informed of the class and value of goods manufactured by any manufacturing establishment in said state, and the language of the recitals carries the suggestion that defendant was derelict in his official duty under the state statute. We think the recitals in question entirely unnecessary in connection with the statement of the offense charged. However, it was in the nature of a background to the circumstances surrounding the main charge, and we think might well be treated as surplusage. It appears to have been so treated by the trial court, and hence specification and proposition II, assigned and argued, which questions the action of the court in directing the district attorney to omit the reading of that part of the indictment containing the recitals referred to. We are of opinion that neither specifications and propositions I nor II present any reversible error, and in view of the fact that those recitals were not read to the jury, but were treated as surplusage by the trial court, they were not prejudicial to the defendant.

Specification and proposition III, assigned and argued, assigns error on the part of the court in permitting the United States attorney to express his individual and personal opinion to the jury that he believed the defendant was guilty, and for stating that the Associated Press and the entire metropolitan press of St. Louis had been denouncing the defendant as guilty, etc. The language in question is shown in the record as follows:

"Thereupon counsel made their closing arguments to the court and jury, and during the argument of counsel for the government the following occurred:

"Mr. Breuer: Now, gentlemen of the jury, apparently from the testimony of the defendants, in this case, the government officers were not the only ones who thought that the defendant Heber Nations was apparently implicated in the Griesedieck Brewery. What am I talking about? Gentlemen of the jury, before this case ever found its way into the courts, before any action was taken on the part of any officers of the United States in the way of a prosecution, we find the Associated Press, a great newspaper organization, and the entire metropolitan press of the city of St. Louis, denouncing Heber Nations, defendant in this case.

"Mr. Cullen: One moment. We object to that. No such testimony, and that is improper argument.

"The Court: Sustain the objection.

"Mr. Breuer: All right, I will make it a little different, and then see what you say. I say that the entire metropolitan press of the city of St. Louis was carrying the stories that two state officers—that two state officers had been giving protection to the Griesedieck Brewery. Now, who were those two state officers? Do you know, from the testimony in this case? Any doubt in your mind about it? Why, of course, the metropolitan press did not say it was Heber Nations; that would have been—that might have got them into serious trouble, if it did not pan out all right. Naturally, they would not say that,

but they did say it was two state officers, and in the course of the investigation conducted thereafter by the government of the United States, when they heard the facts and dragged to light the offenders in this case, they did drag out two state officers, and those two state officers were the defendant Nations and Charlie Prather. Oh, gentlemen of the jury, what did all the St. Louis press have it in for Heber Nations about, I wonder?

"Mr. Cullen: We object to any argument about the views of the St. Louis press. It is not evidence in the case, it is improper to argue it to the jury.

"Mr. Breuer: Now, if the court please, on that subject, I think you will recall that Mr. Cullen brought that out himself, and Mr. Nations testified, went on to tell why he called up certain parties in the case was because he read in the St. Louis press the very things I am talking about.

"The Court: Sustain the objection.

"Later during the argument, the following occurred:

"Mr. Breuer: * * * I believe as firmly as I believe anything in the world in the guilt of Mr.—

"Mr. Cullen: If the court please, I object to counsel stating his personal opinion.

"Mr. Breuer: Oh, all right, Mr. Cullen.

"The Court: Sustained.

"Mr. Cullen: Well, I object to it, and ask the court to instruct the jury that they are not bound by any personal opinion.

"Mr. Breuer: I think the jury know that.

"The Court: Overruled.

"Mr. Breuer: I think every man on this jury knows you have your views, and I have mine, and that my views are not in any wise binding on you; but I submit, gentlemen of the jury, that the testimony in this case finds the defendant guilty. and I assume, gentlemen of the jury, that you can arrive at the same conclusion, if you believe, as I believe, in his guilt.

"Mr. Cullen: If the court please, I object to the statement of the district attorney as to his personal belief.

"The Court: Sustained.

"Mr. Breuer: All right.

"Mr. Cullen: I ask the court that he be rebuked.

"The Court: Overrule the motion."

■ We think the first statement of the United States attorney objected to, and which objection was sustained, was highly improper and prejudicial, and after the objection was sustained counsel still persisted saying: "All right, I will make it a little different,"

etc. Counsel then proceeded to make an even stronger argument by innuendo directed against the defendant, and based upon the assumed attitude of the press. Defendant's counsel finally objected again, and, while the objection was formally sustained, a request for the rebuke of counsel was denied, and the matter entirely ignored in the court's charge to the jury.

We think the portion of the United States attorney's argument quoted and indicated both improper and prejudicial, and that the mere word spoken by the court, "Sustained," was not sufficient to fully correct the error. The entire thought of the attitude of the press was forcibly impressed upon the jury, and in so doing the United States attorney resorted to matters not within the record.

■ Specification and proposition IV, assigned and argued, assigns error in allowing the government to prove that certain general prohibition agents attempted to raid the brewery in question the same morning that it was raided by Gus O. Nations, and that the court erred in refusing to give an instruction withdrawing such testimony. As we have stated, Gus O. Nations was a brother of the defendant and a federal prohibition agent in the city of St. Louis, but on or about the 20th of February, 1924, was in the city of Kansas City, Mo., on official business. It is the claim of the government that about this time, suspicion having been aroused as to the conduct of the brewery company, certain general prohibition agents having no connection with Gus O. Nations came to St. Louis secretly and planned a raid on the brewery, which was to have been consummated on the 21st of February; that Gus O. Nations, on the night of the 20th, on receipt of a communication from the defendant, Heber Nations, suddenly abandoned his work at Kansas City, hurried to St. Louis, and the next morning raided the brewery just in advance of the arrival of the general prohibition agents to raid such brewery pursuant to their previous plan. It is the theory of the government that Heber Nations inspired the raid by his brother hastily, after knowing or suspecting the imminence of the raid by the general prohibition agents, in order to pave the way for his claim that he was acting in good faith as an aid to his brother, Gus. O. Nations, thereby rendering it unlikely to be believed that he at the same time was in conspiracy to permit the brewery to run and dispose of illegal beer. There is some evidence of circumstances in the case justifying the admission of the testimony complained of, and we think that there was no error in over-

ruling the defendant's objection to this testimony.

The fifth specification and proposition assigned and argued rests upon the claim that one Duckett gave perjured testimony on the trial to the effect that he conveyed information relating to said raid to Gus O. Nations, and that this information was conveyed by Duckett carrying on a telephone conversation within the hearing of Gus. O. Nations, and the implication contended for is that it was this information that inspired Gus O. Nations to hurry to St. Louis and precipitate the raid. On motion for new trial, the defendant contended that he conclusively established that this testimony so given by Duckett was perjured, and that he should be given a new trial and opportunity to meet this perjured testimony. In view of the fact that the case must be reversed for the error in connection with the argument by the United States attorney, we find it unnecessary to pass upon this assignment. In case the same testimony is offered by the government, defendant will then have ample opportunity to offer the newly discovered testimony.

For the reason heretofore assigned, the case is reversed.